UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDY FARRALES,<br><br>    Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>    Defendant. | Case No. 21-cv-07624-HSG<br><br>**ORDER DENYING MOTION TO REMAND AND GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. Nos. 12, 21 |

Pending before the Court is a motion to remand filed by Plaintiff Eddy Farrales and a motion for judgment on the pleadings filed by Defendant Ford Motor Company. *See* Dkt. Nos. 12, 21. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motion to remand and **GRANTS** the motion for judgment on the pleadings with leave to amend.

**I.   BACKGROUND**

Plaintiff filed this action in San Francisco County Superior Court in September 2021. *See* Dkt. No. 1-3. Plaintiff alleges that he purchased a vehicle manufactured by Ford. *See* Dkt. No. 1-4 ("FAC") at ¶¶ 4–5. The vehicle was covered by an express warranty, under which Ford undertook to maintain the utility and performance of the vehicle or to provide compensation in the event of a failure in utility or performance. *Id.* at ¶ 6. Accordingly, Plaintiff could deliver the vehicle to Ford's representative for repair in the event of a defect during the warranty period. *Id.*

Plaintiff identifies several defects that developed during the warranty period that impaired the use, value, or safety of the vehicle. *See id.* at ¶ 7. However, Plaintiff alleges that Ford did not cure these defects or replace the vehicle, despite having several opportunities to do so. *See id.* at

¶¶ 8–9. Based on these allegations, Plaintiff asserts several causes of action, including for breach of express and implied warranties under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* (the "Song-Beverly Act"). *See id.* at ¶¶ 10–71. Plaintiff seeks actual damages, civil penalties of no more than two times his actual damages under California Civil Code § 1794(c), punitive damages, as well as attorneys' fees and costs. *See id.*, Prayer for Relief.

Ford removed this action in September, asserting diversity jurisdiction. *See* Dkt. No. 1. Plaintiff now seeks to remand the action back to state court. Dkt. No. 12.

## II.   MOTION TO REMAND

### A.   Legal Standard

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed" to federal court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over civil actions between citizens of different states in which the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

If the district court lacks jurisdiction over an action, a plaintiff may seek remand to state court. *See* 28 U.S.C. § 1447(c). There is a "strong presumption" in favor of remand, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Guas v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Accordingly, "[t]he strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper . . . ." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

### B.   Discussion

Here, the parties appear to agree that complete diversity of citizenship between the parties has been established. *Compare* Dkt. No. 12, *with* Dkt. No. 15 at 5.[1] According to the complaint,

---

[1] The Court notes that in reviewing the parties' briefs, it is apparent that counsel did not comply with Civil L.R. 3-4(c)(2), which requires 12-point type for all text, including footnotes. The Court expects counsel to scrupulously comply with the Local Rules and the Court's standing orders in all future filings. Any future noncompliance may be the basis for sanctions, filings being stricken, or both.

2

Plaintiff is a resident of California and Ford is a corporation organized under the laws of Delaware. *See* FAC at ¶¶ 1–2. Ford also confirms that its principal place of business is Michigan. *See* Dkt. No. 1 at ¶ 16. Therefore, the only dispute is whether the $75,000 amount in controversy is satisfied. "[W]hen a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied unless it appears to a legal certainty that the plaintiff cannot actually recover that amount." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). If, however, "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the removing defendant bears the burden of establishing by a "preponderance of the evidence" that it is "more likely than not" that the amount in controversy exceeds $75,000. *Id.* at 699.

The FAC does not specify the amount of damages Plaintiff is seeking. Rather, the Prayer for Relief simply lists generic requests for damages, including "actual economic damages (including the right of restitution, incidental damages, and consequential damages)," "civil penalty damages of no more than two times Plaintiff's actual damages," "punitive damages," and "costs and expenses, including Plaintiff's attorney's fees . . . ." *See* FAC, Prayer for Relief. Because the amount in controversy is unclear from the face of the complaint, Ford must show by a preponderance of the evidence that the amount in controversy exceeds $75,000.

In its notice of removal, Ford provided evidence that the sale price of the vehicle was $45,800.60. *See* Dkt. No. 1 at ¶ 24. Ford further pointed out that Plaintiff seeks civil penalties up to two times the amount of actual damages as well as attorneys' fees and costs under the Song-Beverly Act. *See id.* at ¶¶ 24–26; *see also* FAC at ¶ 20. Ford therefore posits that the alleged damages and civil penalty alone total $137,401.80.[2] *See* Dkt. No. 1 at ¶ 28. In the motion to remand, Plaintiff does not offer his own estimate, but simply disputes Ford's calculation and proffered evidence.[3] *See* Dkt. No. 12.

---

[2] $45,800.60 (the purchase price of the vehicle) + $91,601.20 (a penalty of two times the purchase price under the Song-Beverly Act) = $137,401.80.
[3] Plaintiff separately filed objections to evidence submitted by Ford in support of its opposition to the motion to remand. *See* Dkt. No. 19. Under Civil Local Rule 7-3(a), "[a]ny evidentiary and

3

### i. Actual Damages

In his motion to remand, Plaintiff contends that Ford has improperly inflated the damages that he seeks in this case. *See* Dkt. No. 12 at 3–5. Under the Song-Beverly Act "the manufacturer shall make restitution [for the vehicle] in an amount equal to the actual price paid or payable by the buyer . . . ." Cal. Civ. Code § 1793.2(d)(2)(B).

But Plaintiff argues that in calculating the restitution amount, Ford has failed to consider required offsets for Plaintiff's use of the vehicle. *See* Dkt. No. 12 at 3–4. Any amount of restitution under the Act "may be reduced by the manufacturer by *that amount directly attributable to use by the buyer* prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity." *See* Cal. Civ. Code § 1793.2(d)(2)(C) (emphasis added). The "amount directly attributable to use by the buyer" is calculated:

> by multiplying the actual price of the new motor vehicle paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity.

*See id.*

Nowhere in the complaint or the motion to remand does Plaintiff posit how much this offset should be. He simply notes that the Ninth Circuit has concluded that "[c]onsideration of the Use Offset [is] appropriate" because "an estimate of the amount in controversy must be reduced if a specific rule of law or measure of damages limits the amount of damages recoverable." *See Schneider v. Ford Motor Co.*, 756 F. App'x 699, 701 (9th Cir. 2018) (quotations omitted), *see also id.* ("[A]n estimate of the amount in controversy must be based on the applicable 'measure of

---

procedural objections to the motion must be contained within the brief or memorandum." *See* Civil L.R. 7-3(a). The Court therefore **DENIES** these objections for failing to comply with Civil Local Rule 7-3.

4

damages,' not on what a plaintiff requests in a complaint."); *accord Luna v. FCA US LLC*, No. 21-CV-01230-LHK, 2021 WL 4893567, at *8 (N.D. Cal. Oct. 20, 2021).[4]

Ford responds that in this litigation Plaintiff is likely to seek the smallest offset possible (which would result in a larger damages calculation). *See* Dkt. No. 15 at 9–10. Based on this assumption, Ford calculates an offset of $13,055.39, and concludes that Plaintiff is seeking to recover at least $32,745.21 in actual damages. *See id.* To calculate this amount, Ford considers the undisputed Retail Installment Sale Contract, and its own records, which indicate:

- At the time of purchase, the vehicle had 42 miles on the odometer. *See* Dkt. No. 1-7, Ex. E.
- When Plaintiff first presented the vehicle for warranty repairs in August 2020, the vehicle had 41,645 miles on the odometer. *See* Dkt. No. 15-1 at ¶ 2; Dkt. No. 15-2, Ex. A.
- The cash price of the vehicle was $35,200. *See* Dkt. No. 1-7, Ex. E.
- The finance charges for the vehicle were $6,957.05. *See id.*
- The manufacturer's rebate was $4,500. *See id.*
- The total sale price for the vehicle was $45,800.60. *See id.*

Ford calculates that Plaintiff drove 41,603 miles [41,645 miles at first repair – 42 miles on odometer at purchase]. *See* Dkt. No. 15 at 9–10. It also calculates that the actual price paid or payable by Plaintiff was $37,657.05 [$35,200 cash price + $6,957.05 finance charge – $4,500 manufacturer's rebate]. *Id.* Ford thus concludes that Plaintiff would likely seek a mileage offset of only $13,055.39 [41,603 miles/ 120,000 x $37,657.05 actual price paid or payable]. *Id.* Plaintiff's actual damages, therefore, would be at least $32,745.21 [$45,800.60 total sale price – $13,055.39 mileage offset]. *Id.* Ford urges that even this is a conservative estimate because it does not include any incidental damages. *See id.* at 10.

Plaintiff suggests that it may not be appropriate to include the full $6,957.05 finance

---

[4] As an unpublished Ninth Circuit decision, *Schneider v. Ford* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

charges in the actual price paid or payable by Plaintiff because "this amount *assumes* that all finance charges over the full 60 month term of the loan . . . would be included as part of [Plaintiff's] actual damages." *See* Dkt. No. 18 at 3 (emphasis in original). Plaintiff reasons that this assumption may be flawed because he "is only about halfway through the loan term" so "there would be a significant amount of interest not-yet accrued." *Id.* Courts have held that under the Song-Beverly Act, the actual price paid or payable by the buyer includes only *paid* finance charges. *See, e.g.*, *Mitchell v. Blue Bird Body Co.*, 80 Cal. App. 4th 32, 37–39 (Cal. Ct. App. 2000). But neither Ford nor Plaintiff offers any evidence regarding how much interest has been paid or has yet to accrue. In such circumstances, courts have found that the total cash price is a more appropriate measure of the total price paid or payable. *See, e.g.*, *Luna* v, 2021 WL 4893567, at *7 (collecting cases).

Here, the cash price of the vehicle was $35,200, but this does not include several charges that are recoverable under the Song-Beverly Act.[5] *See* Dkt. No. 1-7, Ex. E. The total cash price, including an $80 document processing charge, a $29 electronic vehicle registration or transfer charge, and $2,998.80 in sales tax is $38,307.80. *Id.* The Court therefore recalculates the mileage offset as $13,281 [41,603 miles/ 120,000 x $38,307.80]. Subtracting the mileage offset from the total cash price, the Court arrives at a damages estimate of $25,026.80.

### ii. Civil Penalty

The Song-Beverly Act provides that a buyer may recover "a civil penalty of up to two times the amount of damages" if the manufacturer or seller "willfully" violated a warranty or provision of the Act. Cal. Civ. Code § 1794(c). And here, Plaintiff alleges that he informed Ford of the defects and Ford "was, or should have been, aware of its failure to conform the [vehicle] to warranty within a reasonable number of repair opportunities." *See* FAC at ¶¶ 8–9, 16, 19. Based on these allegations, Plaintiff alleges that Ford acted willfully and he is thus entitled to this civil penalty. *See id.* at ¶ 20. A maximum civil penalty award would be $50,053.60 [2 x $25,026.80].

---

[5] The statute explicitly states that restitution shall include "any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B).

6

Plaintiff argues, however, that Ford has failed to offer any evidence supporting the argument that civil penalties should apply. *See* Dkt. No. 12 at 5–7. In short, Plaintiff suggests that Ford must explain in more detail why there is a basis in the record to find that its conduct was willful.

The Court understands that courts in this district have differing views on whether to consider the maximum civil penalties under the Song-Beverly Act when determining the amount in controversy. *Compare Makol v. Jaguar Land Rover N. Am., LLC*, No. 18-CV-03414-NC, 2018 WL 3194424, at *2 (N.D. Cal. June 28, 2018), *with Messih v. Mercedes-Benz USA, LLC*, No. 21-CV-03032-WHO, 2021 WL 2588977, at *6 (N.D. Cal. June 24, 2021) (collecting cases). But the Court agrees with the reasoning of those courts who have found that civil penalties under the Song-Beverly Act should be considered when determining the amount in controversy if Plaintiff has alleged willfulness in the complaint "because that is what Plaintiff put in controversy." *See, e.g.*, *Messih*, 2021 WL 2588977, at *6 (quotations omitted). A removing defendant should not be required to offer evidence that it willfully failed to comply with the Song-Beverley Act. It is enough here that Plaintiff alleged an intentional failure to comply with the Act and seeks the civil penalty. The Court accordingly finds the civil penalty in the amount of $50,053.60 is properly included in the amount in controversy.

\*   \*   \*

The Court need not consider Ford's estimate of attorneys' fees, because actual damages and civil penalties exceed $75,000 [$25,026.80 in actual damages + $50,053.60 civil penalty = $75,080.40].[6] The Court accordingly **DENIES** the motion to remand.

### III. MOTION FOR JUDGMENT ON THE PLEADINGS

Because the Court denies the motion to remand, it considers Ford's motion for judgment on the pleadings. Dkt. No. 21.

---

[6] The Court recognizes that $75,080.40 is very close to the statutory minimum. But the Court notes that it would be appropriate to consider attorneys' fees in this case, which even if modest would easily push this case further over the $75,000 amount in controversy threshold. *See, e.g.*, *Ricksecker v. Ford Motor Co.*, No. 21-CV-04681-HSG, 2021 WL 6621069, at *3, & n.3 (N.D. Cal. Dec. 22, 2021).

**A.     Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Granting judgment on the pleadings is proper when, "taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *See Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quotation omitted). "Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Id.* (quotations omitted).

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

**B.     Discussion**

Ford contends that Plaintiff's claims fail for several reasons, including that (1) Plaintiff

8

does not adequately allege a defect; (2) Plaintiff has failed to allege sufficient detail about the alleged repairs under the Song-Beverly Act; and (3) Plaintiff's fraud-based claims (i) are time-barred; (ii) are barred by the economic loss rule; and (iii) do not meet the heightened pleading standard under Rule 9(b). *See* Dkt. No. 21 at 3–20.

### i. Failure to Identify Defect

Ford first argues that all causes of action should be dismissed because all of the claims rely on the existence of a defect, and Plaintiff fails to plausibly allege any. *See* Dkt. No. 21 at 3–5. "[T]he Ninth Circuit has not addressed the disagreement among district courts about the level of detail required to allege an automobile defect." *Williams v. Tesla, Inc.*, No. 20-CV-08208-HSG, 2021 WL 2531177, at *3 (N.D. Cal. June 21, 2021) (citations omitted). This Court has accordingly followed the Ninth Circuit's general guidance that a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and that "the factual allegations that are taken as true must plausibly suggest an entitlement to relief." *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Here, Plaintiff alleges that he purchased a 2018 Ford Edge in May 2018. *See* FAC at ¶ 4. He asserts that the vehicle "contained and/or developed" one or more "defect(s) which manifested in symptoms including low coolant level; loss of coolant; abnormal burning smell from vehicle; coolant leaks into engine cylinder; engine misfires; rough running; lack of power; hesitation on acceleration; harsh shifts; burnt transmission fluid; excessive metallic debris in transmission fluid; and/or premature wear of internal transmission components." *Id.* at ¶ 7. However, because Plaintiff separates these "symptoms" by the phrase "and/or," it is not clear if Plaintiff—or any other buyer—actually experienced any of these symptoms.

Even putting this drafting choice aside, Plaintiff "merely describes performance problems with the vehicle." *See In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838, 847 (C.D. Cal. 2020) (finding insufficient allegations that "the transmission consistently slips, bucks, kicks, jerks, harshly engages, has premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, difficulty stopping the vehicle, and, eventually, premature transmission failure"). He does not identify the affected components, or

even explain why it would be reasonable to assume that these symptoms are all caused by the same defect. An "abnormal burning smell from [the] vehicle," for example, could be caused by various different components or problems. In the FAC, Plaintiff suggests that the "same defect" Plaintiff experienced existed "in other Ford vehicles equipped with the same 2.0L engine," *see* FAC at ¶ 9, but he does not explain whether the defect is with the engine itself. And elsewhere Plaintiff suggests that the defect may be a problem with "the engine cooling system," and refers to the defect as "the Cooling System Defect." *See id.* at ¶ 41. But other than this conclusory label, Plaintiff does not explain the nature of the alleged defect. The Court finds that the allegations, even when viewed in the light most favorable to Plaintiff, are insufficient to allow Ford to adequately defend itself.

Plaintiff's opposition highlights the insufficiency of the allegations. As noted above, in the FAC Plaintiff at times refers to the alleged defect as "the Cooling System Defect." *See id.* at ¶ 41. But in a footnote, Plaintiff suggests that the symptoms he identifies may have multiple causes:

> [T]he listing of symptoms ***appear to relate*** to two primary systems in the car: the cooling system (i.e., the symptoms concerning low coolant level; loss of coolant; abnormal burning smell from vehicle; coolant leaks into the engine cylinders; engine misfires; and/or rough running) and the transmission (i.e., the symptoms concerning lack of power; hesitation on acceleration; harsh shifts; burnt transmission fluid; excessive metallic debris in transmission fluid; and/or premature wear of internal transmission components).

*See* Dkt. No. 28 at 6, n.3 (emphasis added). As an initial matter, this is not alleged in the complaint. In the FAC, Plaintiff simply groups all the alleged symptoms together as indicative of one or more defects. *See* FAC at ¶¶ 7, 41. Moreover, Plaintiff appears uncertain about his own theory of the case. He states that these symptoms "appear to relate" to the cooling system and the transmission, but does not definitively allege whether these systems are in fact defective. Plaintiff cannot overcome this deficiency by pointing out that Ford may have information in its possession about the alleged defects. *See* Dkt. No. 28 at 1. Ford should not have to speculate about the nature of Plaintiff's claims or the alleged defect(s).

Plaintiff's reliance on this Court's order in *Williams v. Tesla* is misplaced. *See* Dkt. No. 28

at 5. In *Williams*, the complaint contained detailed allegations identifying the allegedly defective system, including the particular component parts that were subject to failure, and the specific symptoms that manifested as a result. *See Williams*, 2021 WL 2531177, at *1, *3. According to the complaint, Tesla's Model S and Model X vehicles "suffer[ed] from a defect in the front and rear suspension control arm assembly, causing the components of the suspension system to prematurely loosen, wear, crack, or break . . . ." *See id.* at *1. The complaint further explained that "[t]his defect manifest[ed] in one or more of the front upper and lower control arms, front suspension aft-link, front suspension fore-link, rear suspension upper link assembly, and rear suspension lower control arm assembly." *Id.* In contrast, Plaintiff here does not identify any particular component or part affected but instead refers generally to list of symptoms that could be related to the "engine cooling system," or perhaps the transmission. Again, this is insufficient.

Because Plaintiff may be able to overcome this deficiency in an amended complaint, the Court addresses Ford's additional arguments.

    **ii.**  **The Song-Beverly Act**

     **a. Express Warranty**

Plaintiff's first and second causes of action arise under the Song-Beverly Act for breach of express warranties. *See* FAC at ¶¶ 10–28. Under the Song-Beverly Act, a plaintiff must establish that "the manufacturer or its representative in this state [could] not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts." Cal. Civ. Code § 1793.2(d)(1) (emphasis added); *see also Brownfield v. Jaguar Land Rover N. Am., LLC*, 584 F. App'x 874, 875 (9th Cir. 2014) ("[U]nder the law that applies in this case, for Plaintiff to be entitled to relief for any particular problem with her [vehicle], she must show that she brought the car in to [the manufacturer] for the repair of that particular problem on more than one occasion."). Under the Act, defendants must also service or repair the vehicles to conform to the applicable warranty within thirty days. *See* Cal. Civ. Code § 1793.2(b).

Ford argues that Plaintiff has not plausibly alleged an express warranty claim under the Act. *See* Dkt. No. 21 at 6–7. The Court agrees. Plaintiff alleges that Ford violated both provisions of the Act. *See* FAC at ¶¶ 10–28. However, Plaintiff offers little detail about the

11

attempted repairs. As discussed in Section III.B.i, Plaintiff does not explain what alleged symptoms he wanted repaired. He alleges in conclusory fashion that he "presented the [vehicle] for repairs to FORD's authorized repair facility(ies)," and that Ford "through its authorized repair facilities, was unable to repair the [vehicle] to conform to the applicable express warranties within a reasonable number of opportunities." *Id.* at ¶ 8. Plaintiff, however, cannot simply parrot the language of the statute. He must provide factual allegations about the number and duration of attempted repairs to allege an express warranty claim under the Act. *See, e.g.*, *Browning v. Am. Honda Motor Co., Inc.*, No. 5:20-cv-05417, 2021 WL 3022007, at *10 (N.D. Cal. July 16, 2021); *Herrera v. Ford Motor Co.*, No. 5:20-cv-00395, 2020 WL 3451328, at *4 (N.D. Cal. June 24, 2020). Again, Plaintiff may not evade his pleading obligations by suggesting that Ford has access to this information. *See* Dkt. No. 28 at 6.

### b. Service Literature and Replacement Parts

Plaintiff's fourth cause of action also arises under the Song-Beverly Act. *See* FAC at ¶¶ 34–38. Under California Civil Code §1793.2(a)(3), a manufacturer must "[m]ake available to authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period." But again, Plaintiff simply repeats the language of the statute and alleges that Ford violated its obligation to "provide . . . sufficient service literature and/or replacement parts to effect repairs to the defect(s) during the express warranty period." FAC at ¶ 35. Plaintiff does not allege any facts to support this assertion. Nor does he explain whether Ford failed to provide service literature or replacement parts. Rather, in opposition Plaintiff states that "given the delayed repairs in Farrales case . . . *it is likely* that Defendant failed to properly ensure its dealership had sufficient parts and literature to timely complete the repairs . . . ." Dkt. No. 28 at 8 (emphasis added). This too is insufficient. Plaintiff must allege more than speculative conclusions to support his claim.

### iii. Fraud Claims

Ford argues that Plaintiff's fraudulent inducement and negligent misrepresentation claims also fail. *See* Dkt. No. 21 at 8–21; *see also* FAC at ¶¶ 39–71.

//

### a. Statute of Limitations

Ford first argues that Plaintiff's fraud claims are time-barred. *See* Dkt. No. 21 at 14–15. "An action for relief on the grounds of fraud or mistake must be commenced within three years." *See Kline v. Turner*, 87 Cal. App. 4th 1369, 1373 (Cal. Ct. App. 2001); Cal. Civ. Proc. Code § 338(d). Ford points out that both fraud claims turn on alleged omissions and misrepresentations at the time of sale. For example, Plaintiff alleges that Ford "concealed and failed to disclose . . . the Cooling System Defect to Plaintiff at the time of sale, or at any time thereafter," and that it did so "with the intent to defraud Plaintiff and induce Plaintiff's purchase of the Subject Vehicle." *See* FAC at ¶¶ 51–52, 61. Plaintiff purchased the vehicle on May 1, 2018, *id.* at ¶ 4, so Ford urges that the statute of limitations ran on May 1, 2021. Dkt. No. 21 at 15. But Plaintiff did not file this case until August 3, 2021. *See* Dkt. No. 1-3, Ex. A.

In response, Plaintiff argues that the doctrines of delayed discovery and fraudulent concealment toll or delay the accrual of his claims. *See* Dkt. No. 28 at 15–16.

Under the delayed discovery rule, "a plaintiff must plead: (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *See Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807–08 (Cal. 2005) (emphasis in original). As the California Supreme Court has explained, "a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury." *See id.* at 808. But it is not clear from the FAC when Plaintiff discovered the alleged defect(s). Nor does he explain why he was unable to discover the source of the vehicle problems earlier despite reasonable diligence.

The doctrine of fraudulent concealment, in turn, "tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (Cal. 2013). "A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable." *See Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 637 (Cal. 2007). But Plaintiff fails to allege any facts about his diligence or the reasonableness of his reliance. Additionally, his allegations of fraud lack the required

13

particularity. Plaintiff concludes, with no factual support, that Ford concealed material facts about the alleged vehicle defect(s). *See* FAC at ¶¶ 47–51. Plaintiff suggests that Ford knew or should have known about the defects because it could have obtained such information from various "internal sources" such as testing data, consumer complaints, and Ford's repair facilities. *Id.* at ¶¶ 9, 49. Plaintiff also suggests that Ford became aware of the defect in early 2017. *Id.* at ¶ 42. But critically, Plaintiff offers no factual support for any of these conclusions. *See id.* at ¶ 42.

### b. Economic Loss Rule

Next, Ford argues that the economic loss rule bars Plaintiff's fraud claims. *See* Dkt. No. 21 at 15–20. The economic loss rule provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (Cal. 2004). Economic losses include damages for inadequate value, the costs of repair or replacement, and any consequent lost profits. *Id.* at 989. The rule "bar[s] a plaintiff's tort recovery of economic damages unless such damages are accompanied by some form of *physical harm* (i.e., personal injury or property damage)." *See North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764, 777 (Cal. Ct. App. 1997) (emphasis in original).

The California Supreme Court limited the economic loss rule in *Robinson Helicopter*. Even though the plaintiff in *Robinson Helicopter* had suffered purely economic harm, the Court nevertheless permitted the plaintiff to recover on claims of fraudulent concealment because the defendant made intentionally false, affirmative representations. *See Robinson Helicopter*, 34 Cal. 4th at 988, 991. The defendant in the case supplied helicopter parts. *See id.* at 985. And with each delivery it also provided certificates confirming that the parts had been manufactured in conformance with the plaintiff's written specifications, which was untrue. *Id.* at 986. The California Supreme Court found that the false certifications were affirmative representations that the plaintiff relied on to its detriment, such that the representations were tortious conduct separate from the breach of the contract itself. *Id.* at 990–91. Crucially, the California Supreme Court further explained that "[b]ecause [defendant's] *affirmative intentional misrepresentations* of fact (i.e., the issuance of the false certificates of conformance) are dispositive fraudulent conduct

14

related to the performance of the contract, we need not address the issue of whether [defendant's] intentional concealment constitutes an independent tort." *Id.* (emphasis added).

Plaintiff argues that the economic loss doctrine does not apply to fraudulent inducement claims. *See* Dkt. No. 28 at 16–18. Plaintiff appears to argue that this is true whether the alleged fraud is based on omissions or affirmative misrepresentations. *See id.* In *Robinson Helicopter*, however, the California Supreme Court explicitly declined to reach this question. And since then, district courts have reached differing conclusions on the application of the economic loss rule to fraudulent concealment claims. *See, e.g.*, *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191–92 (9th Cir. 2021) (collecting cases). The Ninth Circuit has recently certified this question to the California Supreme Court. *See id.*

In the absence of California Supreme Court authority, the Court continues to read *Robinson Helicopter* as a narrow exception to the economic loss rule. *See, e.g.*, *Williams*, 2022 WL 899847, at *6–7. Here, Plaintiff asserts fraud based on an omission, and claims that he suffered an economic loss as a result. *See* FAC at 39–58 ("Fraudulent Inducement – Concealment"). Despite his allegations that the alleged defect creates a safety risk, *id.* at ¶¶ 45–46, Plaintiff does not allege that he actually suffered any personal injury or damage to property aside from the vehicle itself. At least as currently alleged, Plaintiff has suffered only economic losses, which means the economic loss rule bars his fraudulent concealment claim. *See Robinson*, 34 Cal. 4th at 988.

### c. Heightened Pleading Standard

Lastly, Ford argues that Plaintiff has not alleged his fraud claims with sufficient particularity. The parties appear to agree that Plaintiff's fraudulent concealment and negligent misrepresentation claims sound in fraud. *See* Dkt. No. 28 at 8–15.

Plaintiff appears to acknowledge that he is asserting a strictly omissions-based claim. *See id.* at 8 (arguing that "[a] claim based on a party's concealment or omission of material facts then known to it does not require the same set of specificity requirements as those imposed for an affirmative misrepresentation"). However, "[a] negligent misrepresentation claim requires a positive assertion, not merely an omission." *See Lopez v. Nissan N. Am.*, 201 Cal. App. 4th 572

15

(Cal. Ct. App. 2011) (quotation omitted). Plaintiff has not alleged that Ford or any of its agents made affirmative misrepresentations. Plaintiff's negligent misrepresentation claim therefore fails on this basis.

As for Plaintiff's fraudulent concealment claim, Plaintiff appears to suggest that he need not plead omissions-based claims with particularity. *See* Dkt. No. 28 at 8–10. But the Court disagrees. The Ninth Circuit has explicitly applied Rule 9(b)'s heightened pleading standard to nondisclosure claims. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (finding "unavailing" plaintiff's "contention that [] nondisclosure claims need not be pleaded with particularity").

Under California law, to establish a fraudulent concealment claim, the defendant must, inter alia, "have been under a duty to disclose the fact to the plaintiff." *See Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (Cal. Ct. App. 2011). Such a duty may arise if: (1) the defendant was plaintiff's fiduciary; (2) the defendant made a partial representation to the plaintiff that was misleading because it omitted a material fact; (3) the defendant actively concealed a material fact from the plaintiff; or (4) the defendant had exclusive (or at least superior) knowledge of material facts it knew the plaintiff did not have. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997).

Here, Plaintiff urges that Ford had a duty to disclose information about the alleged defects because Ford actively concealed information from Plaintiff and Ford had exclusive knowledge of the defects. *See* Dkt. No. 28 at 11–14. In the FAC, Plaintiff alleges that "[a] the time of Plaintiff's purchase," Ford "knew (or should have known)" about the defects. *See* FAC at ¶ 41. He further asserts that Ford knew about the defects as early as 2017, but "elected to notify only its network of authorized repair facilities." *See id.* at ¶ 42. Plaintiff points to two undated special service messages and a 2019 technical service bulletin. *See id.* at ¶ 41; *see also* Dkt. No. 29, Exs. A–C. Plaintiff fails to explain how any of these documents suggest that Ford knew about defects before Plaintiff purchased his vehicle in 2018, or show that it actively concealed such information from consumers. Plaintiff's allegations do not state a plausible claim that Ford either took affirmative action to conceal the alleged defects or had exclusive knowledge of the defect prior to Plaintiff

16

purchasing his vehicle.

## IV. CONCLUSION

Accordingly, the Court **DENIES** the motion to remand and **GRANTS** the motion for judgment on the pleadings. As with a Rule 12(b)(6) motion to dismiss, however, a court granting judgment on the pleadings under Rule 12(c) should grant leave to amend even if no request for leave to amend has been made, unless it is clear that amendment would be futile. *See Pac. W. Grp., Inc. v. Real Time Solutions, Inc.*, 321 Fed. App'x 566, 569 (9th Cir. 2008). At this stage in the litigation, the Court cannot say that amendment would be futile. Plaintiff may therefore file an amended complaint within 21 days of the date of this order.

The Court further **SETS** a telephonic case management conference on June 21, 2022, at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. The joint case management statement is due June 14, 2022.

**IT IS SO ORDERED.**

Dated:  4/27/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge